Lawrence Joseph **GRIFFIN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–94–007 CR.

Court of Appeals of Texas, Beaumont.

Oct. 25, 1995.

Douglas Barlow, Beaumont, for appellant.

Trenton Bond, Beaumont, for appellee.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury convicted appellant of Forgery by Passing. He then pled true to a single enhancement paragraph and the jury assessed punishment at thirteen (13) years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and a fine of $5,000. Appellant raises three points of error in this appeal, however point of error two, the insufficiency of the evidence to support the conviction, is dispositive.

Appellant's basic contention under this point is the record is entirely silent as to any evidence establishing appellant's knowledge that the instrument he passed was in fact a forgery. The standard of review is whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found each of the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The same standard applies in both direct and circumstantial evidence cases. *See Geesa v. State*, 820 S.W.2d 154, 160 (Tex.Crim.App.1991). The trier of fact is the sole judge of the witnesses' credibility and the weight of the testimony, *Adelman v. State*, 828 S.W.2d 418, 421, 423 (Tex.Crim. App.1992); TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979), and can draw reasonable inferences and make deductions from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex.App.—Beaumont 1993, pet ref'd).

The State's case rested on two witnesses. The State first called the owner of the forged personal check, Robert Rasa. Mr. Rasa testified he had received an order of pre-printed personal checks after opening a new checking account with a bank. The checks were not the design he had chosen and he returned them to the bank. Mr. Rasa was shown a check. He testified it was in the batch returned to the bank and the bank was supposed to have destroyed them. The check was made out to appellant and signed "Robert Rasa". Mr. Rasa testified it was not his signature, he did not know appellant, had never seen appellant before, and did not

authorize appellant to do any work for him (Rasa), nor authorize appellant to take any money from his (Rasa's) bank account.

On cross-examination, Mr. Rasa was asked if he (Rasa) had ever had his vehicle worked on at "Glen's Automotive," or ever had "any work performed by Mr. Griffin while he worked at Glen's Automotive,". Mr. Rasa replied "no" to both inquiries. Appellant's trial counsel further questioned Mr. Rasa:

Q. And you have no knowledge of any person who claimed to be Robert Rasa that paid for work at Glen's Automotive by giving a check to him.

A. No, sir, I have no knowledge of that.

Q. Do you know of anybody else impersonating Robert Rasa at all?

A. No, sir.

Q. So, if somebody had work done through Glen's Automotive and gave a check to Mr. Griffin saying they were Robert Rasa, you wouldn't know who that is.

A. No, sir.

Immediately thereafter appellant's counsel passed the witness. The State asked no further questions and released Mr. Rasa.

The other witness was Ms. Mae Duhon, a bank teller. She identified the check as one she cashed. She identified appellant as the person who cashed the check. She testified she went through the "regular procedures" for cashing checks, and personally witnessed appellant endorse the check on the reverse side and he produced his driver's license. She did not see appellant write anything on the front of the check. Ms. Duhon cashed the check for the amount written, $250.

On cross-examination, Ms. Duhon reiterated nothing irregular took place during the check cashing procedure. She agreed with appellant's attorney that she was not testifying that she knew appellant knew the check was forged when he presented it to her. Appellant's counsel then asked:

Q. Because you don't have any way of knowing whether when somebody presents a check that it's forged or not. Right?

A. We do have ways of knowing, yeah, to check signatures.

Q. Did you check the signatures?

A. I had no reason to because the system approved the check.

Q. So, it appeared to you to be a check that was just signed by Robert Rasa. You had no reason not to catch it. Right?

A. Exactly.

[Sustained objection omitted]

Q. But at any rate, you're not here to tell the jury that Lawrence Griffin seated right here knew that the check was forged, are you?

A. No, I'm not.

The following redirect and recross-examination immediately took place:

Q. [State] When you first saw Lawrence Griffin come in on that day on February 1, 1993, did you have any misgivings about cashing that check for him?

A. [Duhon] Yes, I did, because—the only misgiving I had was because it's made out for an even amount and it's for work. Usually it's made out for an odd amount. That's the reservation I had.

. . . .

Q. [Appellant's counsel] Your misgiving was because it was made out for $250?

A. An even amount for work. I mean, it's usually like taxes deducted or—you know, to make it an uneven . . .

Q. If it were contract labor and somebody were working on an engine for somebody performing automotive work and they were going to do that for $250, then that wouldn't be unusual, would it?

A. No, it wouldn't, if they had contract labor in it, you know, on the memo.

Neither side had any further questions and the State rested. Following a motion for instructed verdict for insufficient evidence as to the knowledge issue, appellant also rested without calling any witnesses.

■ The offense of forgery is committed if a person "forges a writing with [the] intent to defraud or harm another." TEX.PENAL CODE ANN. § 32.21 (Vernon 1994); *Ex parte Porter*, 827 S.W.2d 324, 325 (Tex.Crim.App. 1992). The intent to defraud or harm may be established by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim.App.1985). Proof of intent to defraud is also derivative of other elements. In a forgery, the culpable mental state requires proof of knowledge that the check is forged. *Id.* If the State proves that an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. *Id.* Further, if there is sufficient evidence to establish an actor's theft of the instrument ultimately forged, the evidence is deemed sufficient to show knowledge of the forgery, and therefore sufficient to show an intent to defraud or harm. *Palmer v. State*, 735 S.W.2d 696, 699 (Tex.App.—Fort Worth 1987, no pet.). The state argues the jury could have inferred appellant stole the check and therefore this would allow the jury to infer appellant knew the check was forged. However, there is absolutely no proof of theft of the check by appellant. The evidence merely shows that Mr. Rasa returned the checks to the bank and appellant presented the check for cashing. The State did not attempt to provide either through direct or circumstantial evidence a theft of the check by appellant. Therefore, the knowledge requirement was not satisfied by any proof of theft.

■ Consequently, we must review the evidence to determine if there is other evidence on the knowledge issue. Both the Court of Criminal Appeals and the Courts of Appeals have repeatedly addressed this issue and "[i]n each opinion sustaining a forgery conviction, there has been some additional evidence of 'suspicious circumstances' which show that the defendant knowingly and intentionally passed the forged check." *Spencer v. State*, 700 S.W.2d 300, 302 (Tex.App.— Austin 1985, no pet.). Examples of such circumstances are:

● Where the defendant made an affirmative statement explaining possession of the check which proved false. *Williams*, 688 S.W.2d at 490, *Colburn v. State*, 501 S.W.2d 680 (Tex.Crim.App.1973), *Hilton v. State*, 443 S.W.2d 843 (Tex.Crim.App.1969), and *Wallace v. State*, 813 S.W.2d 748, 752 (Tex. App.—Houston [1st Dist.] 1991, no pet.).

● Where there was proof the name listed as maker of the check was fictitious and the defendant gave false or conflicting explana-

tions of possession of the check. *Colburn,* 501 S.W.2d at 682, *Golden v. State,* 475 S.W.2d 273 (Tex.Crim.App.1971), and *Wallace,* 813 S.W.2d at 752.

• Where the defendant attempted to flee. *Baker v. State,* 552 S.W.2d 818 (Tex.Crim. App.1977), and *Hart v. State,* 682 S.W.2d 346 (Tex.App.—Dallas 1984, pet. ref'd).

• Where the defendant gave false information to the cashier and either did not present or presented false identification. *Wilson v. State,* 605 S.W.2d 284 (Tex.Crim.App.1980), *Phillips v. State,* 488 S.W.2d 97 (Tex.Crim. App.1972), *Castanuela v. State,* 435 S.W.2d 146 (Tex.Crim.App.1968), and *Stone v. State,* 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed).

• Where handwriting between the forged signature and defendant's signature was compared. *Cauble v. State,* 386 S.W.2d 804 (Tex.Crim.App.1965).

On the other hand, in each opinion reversing a forgery conviction, the courts have noted the absence of any of the above circumstances. The Court of Criminal Appeals in *Crittenden v. State,* 671 S.W.2d 527 (Tex. Crim.App.1984), recognized:

• The defendant had made no statement from which it could be inferred that he knew the instrument was forged (*citing Castanuela, Golden, Hilton, Colburn, supra* );

• The defendant was listed as payee and did not falsely represent himself (*citing Phillips, supra* );

• There was no evidence anything appearing on the check was in defendant's handwriting; and

• There was no showing of any connection between the check stolen and the defendant prior to the time he attempted to cash it.

Therefore, the court held, there was insufficient evidence the defendant knew the check was forged and he was entitled to an acquittal. *Crittenden,* 671 S.W.2d at 528.

■ Applying *Crittenden; Pfleging v. State,* 572 S.W.2d 517 (Tex.Crim.App.1978); and *Stuebgen v. State,* 547 S.W.2d 29 (Tex. Crim.App.1977), there is no evidence any of the handwriting on the front of the check

was appellant's; appellant made no statement from which it could be inferred that he knew the check was forged; appellant used his true name and identification; and made no attempt to flee at any time nor conduct himself in any sort of suspicious manner.

The only other possible evidence to consider is Ms. Duhon's misgivings about the check because it was "for work" and for an exact amount. However, Ms. Duhon never questioned appellant about her misgivings. Her unspoken thoughts cannot be evidence of appellant's knowledge that the check was forged.

The evidence being insufficient to sustain the conviction, the judgment is reversed and an acquittal ordered. *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

REVERSED AND ACQUITTED.

WALKER, Chief Justice, dissenting.

I respectfully dissent for reason following.

Appellant appeared at the First City Bank in Beaumont to cash a $250 check. Ms. Mae Duhon, bank teller, positively identified appellant as the person who passed the check in question. She also positively identified State's Exhibit 1 as the check she cashed for appellant. She recalled the incident having taken place "on or about February 1, 1993." Ms. Duhon testified that she went through the "regular procedures" for cashing checks with appellant, and that she personally witnessed appellant endorse the check on the reverse side and place his driver's license number on the check. Ms. Duhon did not see appellant write anything on the front of the check. Ms. Duhon cashed the check for the amount written, $250.

It is obvious from the record that Mr. Rasa did not write nor authorize the writing of the subject instrument. It is clear from the record that appellant personally appeared at the bank and passed the instrument bearing a forged signature of Robert Rasa.

As with any appellate review of the sufficiency of the evidence to sustain the conviction, the relevant question is whether, after

viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found each of the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The same standard applies in both direct and circumstantial evidence cases. *See Geesa v. State,* 820 S.W.2d 154, 160 (Tex. Crim.App.1991). The trier of fact is the sole judge of the witnesses' credibility and the weight of the testimony. *Adelman v. State,* 828 S.W.2d 418, 421, 423 (Tex.Crim.App. 1992); Tex.Code Crim.Proc.Ann. art. 38.04 (Vernon 1979). The trier of fact can draw reasonable inferences and make deductions from the evidence. *Wawrykow v. State,* 866 S.W.2d 87, 88–89 (Tex.App.—Beaumont 1993, pet. ref'd).

Relying somewhat persuasively on the cases *Crittenden v. State,* 671 S.W.2d 527 (Tex.Crim.App.1984); *Pfleging v. State,* 572 S.W.2d 517 (Tex.Crim.App.1978); and *Stuebgen v. State,* 547 S.W.2d 29 (Tex.Crim.App. 1977), appellant contends that there is no evidence that any of the handwriting on the front of the check in question was appellant's; that he (appellant) made no statement from which it could be inferred that he knew the check was forged; that he (appellant) used his true name and identification; and that he made no attempt to flee at any time nor conduct himself in any sort of suspicious manner. However, a common evidentiary thread that runs through each of appellant's three cited cases, and emphasized in each case by the Court of Criminal Appeals in its insufficient evidence reviews, is the fact that none of the forged documents were shown to contain the particular defendant's name in his own handwriting. *See Crittenden, supra* at 528; *Pfleging, supra* at 520; and *Stuebgen, supra* at 32.

In the instant case, Ms. Duhon testified that she personally witnessed appellant endorse the check on the back. This was not contested by appellant either at trial or on appeal. Furthermore, evidence was raised through Ms. Duhon that she hesitated in cashing the check because handwritten into the blank space next to the pre-printed word "For" was the word "work," and that the check was for an even amount ($250). Looking at these two pieces of evidence under the standards for appellate review recited above leads me to no other conclusion than that any rational trier of fact could have found appellant's intent to defraud or harm to have been proven beyond a reasonable doubt.

I would overrule point of error two.