TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00061-CR







Mildred Griffin, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0972108, HONORABLE JON N. WISSER, JUDGE PRESIDING







 Appellant Mildred Griffin, in a jury trial, was convicted of the offense of passing
a forged check. See Tex. Penal Code Ann. § 32.21 (West 1994 & Supp. 1999). The trial court 
assessed appellant's punishment at confinement in a state jail facility for two years, suspended
imposition of sentence, and placed appellant on community supervision for two years.

 Appellant asserts that the evidence is legally and factually insufficient to support
the jury's verdict and that inadmissible evidence was admitted. We will overrule appellant's
points of error and affirm the trial court's judgment.


Facts


 Appellant was a member of and had accounts at the Austin Municipal Federal
Credit Union. At about 11:30 a.m. on February 14, 1997, appellant presented a check to a credit
union employee for which she requested cash. The check for $2778 was dated February 14, 1997
and was payable to and purportedly indorsed by Leilani Burton. The check had been stolen earlier
the same morning. Appellant, testifying in her own defense, asserted that she did not know the
check had been stolen and did not know the payee's indorsement on the check had been forged. 
She testified that her son-in-law, Isaac Jerome Thomas, called her and asked her to meet him at
the credit union to assist him in cashing a check. Her son-in-law needed appellant's help because
he did not have an account at the credit union and the credit union would not cash the check for
him. Appellant testified that on prior occasions, she had helped her son-in-law cash checks, that 
those checks had all been "good," and that she had no reason to believe that this check was
"bad."

 Appellant testified that when she presented this check to the credit union employee,
she explained to the employee that she had encountered problems in 1993 when she cashed third-party checks. She testified that she asked the credit union employee to determine whether the
check she presented was "good" before she indorsed and cashed it because she didn't want to cash
a bad check. Appellant testified the credit union employee went to "the back" twice and then told
appellant that after she indorsed the check they would cash it but would retain $1560 of the
check's proceeds until it cleared. Appellant testified that she agreed to this condition and accepted
$1218, which she testified she gave to her son-in-law. She explained to her son-in-law that the
credit union would pay the balance of $1560 after the check cleared.

 The credit union employee who cashed the check testified that she did not
remember appellant asking her to ascertain whether the check was good. The employee only had
authority to cash checks up to $500 so she sought and received her supervisor's approval to cash
the check. She brought the check back to appellant and appellant indorsed the check in her
presence. The employee returned to her supervisor who gave her the cash that she in turn gave
to appellant. $1560 was retained by the credit union because appellant was indebted to the credit
union. However, it had not been determined at that time how much money appellant owed the
credit union.

 Appellant testified that about an hour after she gave her son-in-law the money, she
received a telephone call from a credit union employee who told her the check she had cashed had
been stolen. Appellant then went out and found her son-in-law's car parked at his aunt's house. 
She went home, called the police, and gave them a description of her son-in-law's car and told
them he was the person who gave her the check to cash for him. She testified that when the
officers attempted to arrest her son-in law, he escaped.

 After the payee of the check, Leilani Burton, was notified that her check had been
stolen, she went to the police station. While she was talking to an officer at the police station,
the officer received a telephone call from appellant. The police officer handed the phone to
Burton. While Burton was being cross-examined by defense counsel, she recounted her telephone
conversation with appellant as follows:


Q. Okay. Did they make you aware of who took the check?


A. No.


Q. Okay. Have you ever heard the name Isaac Jerome Thomas before?


A. Yes.


Q. Where have you heard that name?


A. From her (indicating [appellant]).


Q. Okay. So have you spoken to her directly?


A. At the police station when she called. The officer gave me the phone.


Q. Okay. So she called the police station while you were there?


A. Yes.


Q. And at that time, did she tell -- the police officer tell you that the person that
took the check was Isaac Jerome Davis -- or excuse me, Isaac Jerome
Thomas?


MR. COBB: Your Honor, object as to what the police may have told.


MR. TURRO: I'll rephrase the question, Your Honor.


Q. (By Mr. Turro) Okay. Did Ms. Griffin tell you at the time who took the
check?


A. She said that her daughter's boyfriend had took -- had made her take the
check. That's what she told me.


Q. Made her take the check from where?


A. From where -- that she -- they was together or something and that they had got
the check. And she -- she said that he made her cash it.


Q. Okay. So he made her cash the check, but she didn't take the check?


A. I don't know if she took it or not, because I didn't want to talk to her
anymore.


Q. Okay. And she didn't have any knowledge at the time -- she didn't tell you
she knew the check at the time was not supposed to be his check?


A. No, she just said that she wanted to pay the money back. The officer told her
to bring the money back and that he would -- he wouldn't press charges.



Burton was not asked to clarify her testimony by either defense counsel or the prosecutor.

 A credit union employee testified that in 1993 appellant, who was a member and
had credit union accounts, indorsed and cashed five third-party checks. Appellant received a
portion of each check in cash and the remaining portion was credited to her account. These
checks were all returned by the bank upon which they were drawn to the credit union stamped
"payment stopped." A credit union employee informed appellant that these checks were returned
because they had been stolen and the payee's indorsement forged. Appellant at that time claimed
that she cashed each of these checks as an accommodation for different people who were friends
of her daughter and that she did not know the checks had been stolen. Appellant testified that she
had cashed these checks in the circumstances she had stated at that time. However, at the time
of trial, appellant could not remember the names of the people for whom she cashed the checks,
and she did not remember whether they were men or women. Although appellant said it was
unfair, she had agreed to reimburse the credit union for its loss of funds in the total amount of the
five checks. However, appellant only partially repaid the credit union. In due time, the credit
union closed appellant's accounts and charged off the balance of appellant's debt. Later, appellant
made an application for membership in the credit union and opened an account in order, she said,
to save money for her granddaughter. In her new application, appellant used a social security
number in which one digit was different from that of the social security number used to open the
first account. At trial, appellant testified that she did not have her social security card with her
when she opened the new account and that the use of the different social security number was
unintentional and due to her faulty memory. A new account was opened for her and that was the
account appellant maintained at the credit union at the time she cashed the check in the instant
case.

 Appellant gave three versions of why she cashed the check as a "favor" to her son-in-law. It was so he could get his car repaired and have a way of getting to work and be able to
support his children, including appellant's grandchild. Appellant also said she cashed the check
as a favor for her son-in-law's aunt because she was sick and unable to cash it for herself. 
Appellant also testified that she cashed the check for both her son-in-law and his aunt for them
to share the money.


Legal Sufficiency


 In her third point of error, appellant urges that the evidence is legally insufficient
to support the jury's verdict. In reviewing the legal sufficiency of the evidence, the test is
whether, after viewing the evidence in the light most favorable to the verdict, any rational trier
of fact could have found the essential elements of the offense beyond a reasonable doubt. See
Jackson v. Virginia, 443 U.S. 307, 319 (1970); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim.
App. 1994); Geesa v. State, 820 S.W.2d 154, 156 (Tex. Crim. App. 1991); Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). The only matter challenged by appellant is that the
evidence is legally insufficient to show that she knew the check she admittedly passed had been
stolen and forged. The State urges that the circumstantial evidence is sufficient to show that at
the time she passed the check, appellant had knowledge that the check was stolen and that the
payee's purported prior indorsement was forged, and therefore that she had the required intent to
harm and defraud.

 To prove the offense of passing a forged instrument, it is necessary to prove the
defendant had the intent to defraud and harm another. This necessarily requires proof that a
defendant had knowledge that the instrument passed was forged. See Anderson v. State, 621
S.W.2d 805, 808 (Tex. Crim. App. 1981); Stuebgen v. State, 547 S.W.2d 29, 32 (Tex. Crim.
App. 1977); Green v. State, 761 S.W.2d 824, 825-26 (Tex. App.--Dallas 1988, no pet.). That
required proof may be established by circumstantial evidence. See Williams v. State, 688 S.W.2d
486, 490 (Tex. Crim. App. 1985); Griffin v. State, 908 S.W.2d 624, 627 (Tex. App.--Beaumont
1995, no pet.).

 It is uncontroverted that the check was stolen, the payee's indorsement was forged,
and the check was presented, indorsed, and passed by appellant on the same morning that the
check was drawn and stolen. If a jury might infer that a defendant stole a check, then the jury
might also infer from the same evidence that the defendant knew the indorsement was forged and,
therefore, had the intent to defraud or harm the person to whom he subsequently passed it. See
Palmer v. State, 735 S.W.2d 696, 698 (Tex. App.--Fort Worth 1987, no pet.); Goodrum v. State,
700 S.W.2d 630, 631-32 (Tex. App.--Houston [14th Dist.] 1985, pet. ref'd); Meade v. State, 641
S.W.2d 345, 346-47 (Tex. App.--Corpus Christi 1982, no pet.).

 Appellant made a voluntary admission to Leilani Burton that the jury could construe
as an admission that she assisted in the theft of the check. When one passes a forged check which
has been stolen and the evidence is sufficient to establish the defendant's theft of the check, the
evidence is sufficient to show knowledge of the forgery and, therefore, to show an intent to
defraud and harm another person. See Palmer, 735 S.W.2d at 699.

 Appellant gave conflicting versions of why and the purpose for which she possessed
and passed the check. See Wallace v. State, 813 S.W.2d 748, 752 (Tex. App.--Houston [1st Dist.]
1991, no pet.); Lossman v. State, 668 S.W.2d 504, 507 (Tex. App.--Fort Worth 1994, no pet.);
Meade, 641 S.W.2d at 347. Appellant admitted that she had no relationship with either the
drawer or payee of the check. In the prior transactions, appellant also had no relationship with
the drawers or payees of the checks. According to appellant, she cashed the checks as an
accommodation to other persons. However, she received for her own benefit at least a portion
of the proceeds of the checks.

 We conclude that when the circumstantial evidence is viewed in the light most
favorable to the jury's verdict, the jury could rationally find beyond a reasonable doubt that
appellant knew when she passed the check that the payee's prior indorsement was a forgery and
that she passed the check intending to defraud and harm another. The evidence is legally
sufficient to support the jury's verdict. Appellant's first point of error is overruled.


Factual Sufficiency


 In her second point of error, appellant contends that the evidence is factually
insufficient to support the jury's verdict. She claims that the evidence is factually insufficient to
prove that she knew the purported indorsement by the payee was forged. Therefore, she argues
the evidence was factually insufficient to prove the necessary element of the offense that she
passed the check with the intent to defraud or harm another. In reviewing the factual sufficiency
of the evidence, we view all of the evidence "without the prism of the light most favorable to the
prosecution." See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State,
823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet ref'd untimely filed). In performing a factual
sufficiency review, appellate courts are required to give deference to the jury's verdict and to
examine all of the evidence impartially setting aside the jury's verdict "only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust." Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997) (quoting Clewis, 922 S.W.2d at 129).

 After considering and weighing all of the evidence, which we have summarized,
and giving deference to the jury's verdict, we cannot conclude that the jury's verdict is so contrary
to the overwhelming weight of the evidence as to be clearly wrong or unjust. Point of error two
is overruled.


Admissibility of Prior Transactions


 In points of error three, four, and five, appellant asserts that the trial court erred
in admitting "evidence of other acts when such evidence was irrelevant," that "the State failed to
prove such extraneous acts beyond a reasonable doubt," and that the trial court improperly
admitted this evidence "when the probative value of such evidence was substantially outweighed
by the danger of unfair prejudice." Out of the presence of the jury, the trial court conducted a
hearing to determine the admissibility of evidence relating to appellant's cashing of the five third-party checks in 1993. A credit union employee testified that in 1993 appellant, who was a
member and maintained credit union accounts, indorsed and cashed five third-party checks. All
of these checks had been returned unpaid to the credit union by the bank upon which they had
been drawn, marked "payment stopped." At that time, the credit union employee told appellant
that the checks had been returned because they had been stolen and the payee's prior indorsement
had been forged. No proof was offered to show that these five checks had been in fact stolen and
the payee's indorsement forged. Over appellant's objection, the trial court ruled the State could
show that appellant had been told these checks had been stolen because "based on the State's
theory there is some relevancy and the relevancy outweighs any undue prejudicial effect."

 During trial, the State offered as Exhibit 3 the business records of the credit union
relating to appellant's accounts. After some of the records were removed from the file, the State
re-offered Exhibit 3 and defense counsel stated that there was "no objection" to the exhibit. 
Exhibit 3 includes copies of the front and back of each of the five checks stamped "payment
stopped" and bearing the purported prior indorsement of the payee and appellant's indorsement. 
Exhibit 3 also included credit union employee's hand-written notes relating to cashing the checks,
appellant's applications for credit union membership, and several monthly statements of
appellant's accounts. Appellant did not object to the admission in evidence of Exhibit 3 and
affirmatively stated there was "no objection" to the exhibit. The exhibit was evidence of the same
matters to which appellant objected in the pre-admission hearing. A defendant may not complain
on appeal about the admission of evidence when the record shows that the same evidence was
admitted without objection. See Rogers v. State, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993);
Johnson v. State, 803 S.W.2d 272, 290-91 (Tex. Crim. App. 1990); Mutcher v. State, 514
S.W.2d 905, 919 (Tex. Crim. App. 1974); Roy v. State, 891 S.W.2d 315, 325 (Tex. App.--Fort
Worth 1994, no pet.); Macias v. State, 776 S.W.2d 255, 259 (Tex. App.--San Antonio 1989, pet.
ref'd). The error now claimed on appeal was not preserved for appellate review. Because the
errors claimed were not preserved for appellate review, points of error three, four, and five are
overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices B. A. Smith, Yeakel and Dally*

Affirmed

Filed: September 16, 1999

Do Not Publish











* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



e have summarized,
and giving deference to the jury's verdict, we cannot conclude that the jury's verdict is so contrary
to the overwhelming weight of the evidence as to be clearly wrong or unjust. Point of error two
is overruled.


Admissibility of Prior Transactions


 In points of error three, four, and five, appellant asserts that the trial court erred
in admitting "evidence of other acts when such evidence was irrelevant," that "the State failed to
prove such extraneous acts beyond a reasonable doubt," and that the trial court improperly
admitted this evidence "when the probative value of such evidence was substantially outweighed
by the danger of unfair prejudice." Out of the presence of the jury, the trial court conducted a
hearing to determine the admissibility of evidence relating to appellant's cashing of the five third-party checks in 1993. A credit union employee testified that in 1993 appellant, who was a
member and maintained credit union accounts, indorsed and cashed five third-party checks. All
of these checks had been returned unpaid to the credit union by the bank upon which they had
been drawn, marked "payment stopped." At that time, the credit union employee told appellant
that the checks had been returned because they had been stolen and the payee's prior indorsement
had been forged. No proof was offered to show that these five checks had been in fact stolen and
the payee's indorsement forged. Over appellant's objection, the trial court ruled the State could
show that appellant had been told