**Opinion filed October 3, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00276-CR

_____

## DAKOTA BLAGG, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Gaines County, Texas**
**Trial Court Cause No. 17-4697**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Dakota Blagg, of forgery, and the trial court sentenced him to confinement for two years. *See* TEX. PENAL CODE ANN. § 32.21 (West Supp. 2018). In a single issue on appeal, Appellant argues that the evidence presented at trial was legally insufficient to support his conviction. We affirm.

*Background Facts*

On September 16, 2016, Appellant and Manuel Olivio drove to the First United Bank in Seagraves. While Appellant was waiting in the drive-through lane of the bank, Olivio got out of the vehicle and ran off. Appellant then presented a check to the bank teller. Upon receipt, the bank teller, Seth Barron, was immediately concerned about the validity of the check in light of his prior dealings with the purported drawer and payee.

The check was made out to "HBC," commonly known in the area to mean Higginbotham Bartlett Construction. The drawer of the check was Sarabia & Son Concrete Construction LLC. Barron testified that, while it was not uncommon for Sarabia & Son to write checks to Higginbotham, this check was "very unusual" for this particular customer.

Typically, Sarabia & Son's checks were printed. The check presented by Appellant, however, was handwritten. Moreover, the amount to be paid on the check was unusually small. Ricky Sarabia, the owner of Sarabia & Son, testified that the company's checks to Higginbotham were usually for around $2,000, whereas the present check was only for $201.43. Barron was further concerned by Appellant's desire to cash the check because, typically, checks from Sarabia & Son to Higginbotham were deposited. Additionally, the check was neither endorsed nor dated, and Appellant failed to present any identification. With many causes for concern, Barron notified his supervisor of the situation.

Christella Valles, the operations manager at First United Bank, then called Sarabia to ask whether Sarabia had written a check to Higginbotham for $201.43. Sarabia denied writing the check—both over the phone and in person after examining the check himself. Accordingly, the bank refused to cash the check and informed Appellant that the bank was going to keep the check. Appellant then calmly drove off "like a normal customer would."

At trial, Sarabia testified that, although the signature on the check was his, the rest of the handwriting was not. He further testified that he was the only person authorized to write checks for Sarabia & Son and that he always wrote his driver's license number and cell phone number in the upper left part of the check. Sarabia additionally stated that he always dated his checks and, on checks to Higginbotham, wrote "material" on the memo line. The check presented by Appellant was missing all of these unique attributes of a properly payable check drafted by Sarabia. Higginbotham's manager testified that he had never given a check made out to the company to anyone else for them to cash.

In explaining how someone may have procured one of Sarabia & Son's checks, Sarabia stated that he frequently kept signed checks in his truck in case he needed to pay someone while he was out of the office. In the alternative, Sarabia also indicated that he kept company checks at home and that his house was broken into around August of 2016, a month prior to the offense date in this case.

In his defense, Appellant testified that he had received the check from someone else and was merely cashing the check for that person because that person did not have the proper identification necessary to cash it. However, this was the first time that Appellant told anyone about a man asking him to cash a check. Throughout his testimony, Appellant maintained that he had never seen the individual before and that, after Appellant informed the individual of his unsuccessful attempt to cash the check, he never saw him again.

At the conclusion of Appellant's trial, the jury found him guilty of forgery. This appeal followed.

*Evidentiary Sufficiency*

In Appellant's single issue on appeal, he argues that the evidence presented at trial is insufficient to support his conviction for forgery. Specifically, Appellant claims that there is no evidence of his intent to defraud another. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inference raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

A person commits the offense of forgery "if he forges a writing with intent to defraud or harm another." PENAL § 32.21(b). Here, Appellant challenges only the intent element of his conviction. To prove the necessary intent for forgery, the jury "must be able to reasonably infer that Appellant knew the instrument was forged beyond a reasonable doubt." *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). If the State proves that an actor has knowledge that a forgery has occurred, proof of intent to defraud is inferred. *Griffin v. State*, 908 S.W.2d 624, 627 (Tex. App.—Beaumont 1995, no pet.). In reaching its verdict, a jury may consider direct evidence and circumstantial evidence equally, and intent may be inferred from the conduct of the accused and the circumstances surrounding the forgery. *Ramsey*, 473 S.W.3d at 809; *Turner v. State*, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980). Moreover, "circumstantial evidence alone may be sufficient to

4

uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey*, 473 S.W.3d at 809.

In *Crittenden v. State*, 671 S.W.2d 527, 528 (Tex. Crim. App. 1984), the Court of Criminal Appeals outlined several suspicious circumstances that are probative of an individual's knowledge that an instrument was forged. Of those circumstances, at least two are present in this case: (1) Appellant was not listed as the payee and he falsely represented himself and (2) Appellant attempted to flee after his attempt to deposit the check was thwarted. 671 S.W.2d at 528 (listing suspicious circumstances that were absent that would have provided evidence of the defendant's guilt).

The check in this case was made out to "HBC" and had no endorsement from either Higginbotham or the alleged individual who asked Appellant to cash the check. Still, Appellant presented the check to First United Bank and, in doing so, provided no identification as to who he was and did not indicate that he was not "HBC." In fact, Appellant's identity was only discovered after Barron wrote down Appellant's license plate number. Then, Appellant left the bank without the check, in stark contrast to how one would normally respond when presenting a bank with a legitimate check. *See Hart v. State*, 682 S.W.2d 346, 347 (Tex. App.—Dallas 1984, pet. ref'd) (holding that, even though the defendant walked away and did not run, "leaving the check cashing center without cash or check was an attempt to flee and . . . was sufficient evidence to prove [the defendant's] knowledge that the instrument was forged and to prove that [the defendant] possessed the intent to defraud or harm").

Appellant relies primarily on his own testimony to show that he did not have knowledge that the check was forged and that he was merely an innocent bystander. The jury, however, is under no obligation to believe Appellant's testimony, and it would appear the jury did not. *See Sharp*, 707 S.W.2d at 614. Considering the suspicious circumstances surrounding the forgery, we conclude that a rational jury

could have found, beyond a reasonable doubt, that Appellant had knowledge of the forgery and had the intent to deceive. *See* PENAL § 32.21. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


October 3, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.