**James HUNTLEY, III, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–97–01205–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1999.

Discretionary Review Refused
Jan. 26, 2000.

Karen Clark Harpold, Houston, for Appellant.

John B. Holmes, Julie Klibert, Houston, for State.

**MAJORITY OPINION
ON REHEARING
EN BANC**

TIM TAFT, Justice.

A jury convicted James Huntley, III, of forgery, found two enhancement paragraphs true, and sentenced him to 10 years in prison. A panel of this court

reversed the conviction and reformed the trial court's judgment to show acquittal on April 1, 1999. Rehearing en banc was granted on the State's motion, and the April 1 opinion is withdrawn. We substitute this opinion in its stead. We address whether the evidence was legally and factually sufficient to support the conviction of forgery. We affirm.

## Facts

On Sunday morning, June 8, 1997, the complainant's purse was taken by a black male in a robbery. The complainant's purse contained her checkbook, credit cards, and a cellular phone. The next morning, appellant attempted to cash one of the complainant's stolen checks. He presented an identification card and a social security card, both in the name of "James Huntley, III." The check was dated June 6, 1997, two days before the robbery, and was made payable to appellant in the amount of $465.00. The check was purportedly signed by the complainant, and it was already endorsed by appellant.

Noticing a zero balance in the complainant's account, the bank teller told appellant she needed to get the check approved. She took the check and complainant's signature card to her supervisor, who determined that the check was reported stolen and notified the police. It took the police about 20 minutes to arrive. Appellant waited for the teller to return during this time.

## Legal Sufficiency

In his first point of error, appellant contends the evidence was legally insufficient to prove that appellant had the requisite intent to harm or defraud any person.

## A. Standard of Review

We apply the usual standard for reviewing the legal sufficiency of the evidence.

*Lane v. State,* 933 S.W.2d 504, 507 (Tex. Crim.App.1996). The same standard applies in both direct and circumstantial evidence cases. *See Geesa v. State,* 820 S.W.2d 154, 160 (Tex.Crim.App.1991).

## B. Analysis

To prove the crime of forgery, the State was required to show that appellant, (1) with the intent to defraud or harm another, (2) passed (3) a writing (4) that purported to be the act of another (5) who did not authorize the act. *See Williams v. State,* 688 S.W.2d 486, 488 (Tex.Crim.App. 1985); *Wallace v. State,* 813 S.W.2d 748, 751 (Tex.App.—Houston [1st Dist.] 1991, no pet.). Evidence in this case showed appellant attempted to cash a check purportedly made by the complainant, who testified she did not write the check or authorize anyone to do so. Therefore, the issue is whether appellant had the intent to defraud or harm another when he passed the check.

The intent to defraud or harm another in a forgery case can be inferred if the State proves an actor has knowledge that the check is forged. *Williams,* 688 S.W.2d at 488. In this case, the State presented uncontroverted prima facie evidence that the check was forged: (1) the check was stolen; (2) the complainant did not write the check or authorize anyone to do so; and (3) the complainant did not know appellant or anyone who knew appellant. Thus, the only issue is whether appellant knew the check was forged. The following facts demonstrate suspicious circumstances showing appellant had this knowledge:

1.  appellant is a black male who was in possession of the forged check which had been stolen less than 24 hours earlier by a black male;

2.  no other stolen checks showed up after appellant's arrest, suggesting

possible association between appellant and the robber;

3. appellant presented the forged check for cash to the issuing bank early Monday morning, when the bank first opened after the robbery, maximizing the chances that the check might be cashed if the complainant had not yet reported her checks stolen;

4. the amount of the check was $465, making it unlikely that appellant would have been given such a large check by a stranger, and yet appellant did not subpoena this person as a witness, to explain appellant's possession of the check;

5. the check made out to appellant was dated two days before it was stolen from the complainant, and thus two days before the check could have been presented to appellant, which should have at least alerted appellant to irregularity in its issuance as a predated check; and

6. the complainant did not know appellant, making it suspicious that appellant would be given such a large check by a stranger.

Ordinarily, we would look to the reasonableness of the explanation appellant gave for his possession and presentment of the forged check. Here, any such explanation given at the crime scene is not available because of the death of the arresting officer prior to trial. However, as the State argued legitimately in closing, appellant did not subpoena as a witness the person who purportedly wrote the check payable to him. This would have provided the jury with an explanation without which the above-listed suspicious circumstances became even more suspicious and rendered appellant's recent, personal possession of a stolen check unexplained.

There have been cases where the circumstances are suspicious enough to conclude the defendant knew the check was forged, regardless of any explanation. *See, e.g., Palmer v. State,* 735 S.W.2d 696, 698 (Tex.App.—Fort Worth 1987, no pet.) (finding defendant's lack of any relationship with payor taken in connection with his unexplained, personal, recent possession and passing of payor's stolen check was sufficient evidence to establish defendant's knowledge the check was forged, for purpose of offense of passing forged writing).[1] This is one of those cases.

The dissenting opinion asserts this case has no "suspicious circumstances" like those that have sustained previous forgery convictions. *See Griffin v. State,* 908 S.W.2d 624, 627 (Tex.App.—Beaumont 1995, no pet.) (listing examples of suspicious circumstances which sustained forgery convictions). Although not identical to the specific examples listed in *Griffin,* the suspicious circumstances in this case, when viewed in their totality, would enable a rational jury to conclude that appellant knew the check was forged; hence, his intent to defraud or harm another could be inferred.[2] Viewing the evidence in the light most favorable to the verdict, we hold the evidence is legally sufficient and the jury could have found, beyond a reason-

---

1. Although there was a false explanation by Palmer's companion, that explanation did not play a part in the court's reasoning. It is noteworthy that Palmer did not appear nervous during the time the check was being verified even though a uniformed police officer stood nearby on duty as a security guard. *Id.* at 697.

2. The dissenting opinion asserts this case is controlled by *Crittenden v. State,* 671 S.W.2d

527, 528 (Tex.Crim.App.1984). We note that *Crittenden* was also cited in the dissenting opinion of another Court of Criminal Appeals case very similar to this case. *See Williams v. State,* 688 S.W.2d at 488–89, 492. We also note that Crittenden presented a witness at trial that corroborated his explanation given to the arresting officers. *See Crittenden,* 671 S.W.2d at 527–28.

able doubt, that appellant was guilty of forgery.

We overrule appellant's first point of error.

## Factual Sufficiency

In his second point of error, appellant contends that the evidence was factually insufficient to prove that appellant had the requisite intent to harm or defraud any person.

### A. Standard of Review

We apply the usual standard for reviewing the factual sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126, 134 (Tex. Crim.App.1996).

### B. Analysis

Appellant did not present any evidence at trial, therefore we consider only evidence presented by the State. Appellant presented two forms of identification when he attempted to cash the check, and he did not flee while waiting in the bank. These facts, the dissent claims, suggest appellant did not know the check was forged. However, there are other possible explanations for these facts, ·rendering conclusions about appellant's behavior speculative. Viewing all evidence in this case without the prism of "in the light most favorable to the prosecution," we hold the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust *Id.* Therefore, the evidence was factually sufficient.

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.

**3.** The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas

Chief Justice SCHNEIDER and Justices COHEN, MIRABAL, HEDGES, and NUCHIA join this opinion.

Justices O'CONNOR, WILSON, ANDELL, and PRICE,[3] dissenting.

MICHOL O'CONNOR, Justice, dissenting on rehearing en banc.

I dissent. James Huntley, III, the appellant, was convicted of forgery and sentenced to ten years in prison. A unanimous panel of this Court reversed the conviction and reformed the trial court's judgment to show acquittal on April 1, 1999. The State moved for rehearing en banc, and a majority of the Court voted to grant rehearing and affirm the conviction.

I agree with the appellant that the evidence was legally insufficient to show he had the requisite intent for the crime of forgery. The State had the burden to prove *each* of the essential elements of the crime beyond a reasonable doubt. *Short v. State,* 874 S.W.2d 666, 667 (Tex.Crim. App.1994); *Wynn v. State,* 847 S.W.2d 357, 359 (Tex.App.—Houston [1st Dist.] 1993), *aff'd,* 864 S.W.2d 539 (Tex.Crim.App.1993). To prove the crime of forgery, the State was required to show that the appellant, (1) with the intent to defraud or harm another, (2) passed (3) a writing (4) that purported to be the act of another, and (5) that other person did not authorize the act. *See* Tex. Pen.Code § 32.21; *Williams v. State,* 688 S.W.2d 486, 488 (Tex.Crim.App. 1985); *Wallace v. State,* 813 S.W.2d 748, 751 (Tex.App.—Houston [1st Dist.] 1991, no pet.).

In the present case, the issue is whether the State's evidence was legally sufficient to prove the appellant acted with the intent to defraud or harm the complainant. The intent to defraud or harm may be established by circumstantial evidence.

at Houston, participating by assignment.

*Williams*, 688 S.W.2d at 488. If the State proves an actor has knowledge that a particular check is forged, proof of intent to defraud is inferred. *Wallace*, 813 S.W.2d at 751. If the State proves an actor's theft of the instrument ultimately forged, the evidence is sufficient to show knowledge of the forgery, and, therefore, sufficient to show an intent to defraud or harm. *Id.*

The State did not prove any connection between the appellant and the theft of the check. However, the majority relies on certain facts related to the theft which it finds sufficient to show his knowledge. Specifically, the majority relies on the following:

1. The appellant is a black male who was in possession of the forged check which had been stolen less than 24 hours earlier by a black male;

2. No other stolen checks showed up after the appellant's arrest, suggesting possible association between the appellant and the robber;

3. The appellant presented the forged check for cash to the issuing bank early Monday morning, when the bank first opened after the robbery, maximizing the chances that the check might be cashed if the complainant had not yet reported her checks stolen;

4. The amount of the check was $465, making it unlikely that the appellant would have been given such a large check by a stranger, and yet the appellant did not subpoena this person as a witness, to explain appellant's possession of the check;

5. The check made out to the appellant was dated two days before it was stolen from the complainant, and thus two days before the check could have been presented to the appellant, which should have at least alerted the appellant to irregularity

in its issuance as a predated check; and

6. The complainant did not know the appellant, making it suspicious that the appellant would be given such a large check by a stranger.

Op. at 815. The majority claims these facts, "when viewed in their totality," show the appellant knew the check was forged. Op. at 815.

When conducting a legal sufficiency review, a vital fact may not be established by stacking inference upon inference. *See Richardson v. State*, 834 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Thus, the appellant's intent to defraud is a vital fact that cannot be established by stacking inferences. We may infer the appellant intended to defraud or harm the complainant if the State proved the appellant knew the check was forged. *See Wallace*, 813 S.W.2d at 751. However, we may not infer the appellant's knowledge of the forgery, and from the inference of his knowledge, infer his intent to defraud. Nonetheless, the majority does just that. It stacks inferences to conclude the appellant knew the check was forged. For example, the majority relies on the fact that the appellant, like the person who stole the complainant's check, was a black male; thus, the appellant must have stolen the complainant's check (despite the fact the complainant could not identify the appellant as the man who stole her purse), which means he knew the check was forged. From this knowledge, the majority infers the appellant's intent to defraud.

In affirming the appellant's conviction, the majority ignores Court of Criminal Appeals authority with facts identical to this case. In *Crittenden v. State*, 671 S.W.2d 527, 528 (Tex.Crim.App.1984), the Court of Criminal Appeals reversed the defendant's forgery conviction because the evidence was legally insufficient to show the appellant had the intent to defraud.

In *Crittenden*, the defendant did not make any statement from which it could be inferred that he knew the instrument was forged; the defendant was the named payee on the check; the defendant did not falsely represent himself; there was no evidence to show any writing on the check was in the defendant's handwriting; there was no evidence of any connection between the stolen check and the defendant; and the defendant did not attempt to flee after his attempt to deposit the check was thwarted. *Id.*

Here, the appellant was the named payee on the check; he did not falsely represent himself, but instead presented the teller with two forms of identification (a social security card and an identification card for "James Huntley, III"); there was no evidence showing the appellant's handwriting appeared on the check; there was no evidence of a connection between the stolen check and the appellant; and the appellant did not attempt to flee—instead he waited 20 minutes until the police arrived. Just as in *Crittenden*, the appellant's conviction should be reversed.[1]

I believe the majority stretches to bridge the gap of evidence left by a missing witness. Oftentimes, the outcome of a case is affected because a party's witness is unavailable to testify at trial. Here, the State's key witness, the arresting officer, died before trial. Instead of reversing for a lack of evidence because of the absence of a key witness, the majority simply supplies inferences based on inferences as a substitute for evidence.

Worse than that, in two instances the majority opinion disregards the presumption of innocence and the State's burden to prove guilt beyond a reasonable doubt. First, the majority relies on the fact that the appellant did not subpoena the person who wrote him the check as a witness, making his possession of the check unexplained. The majority shifts the burden to the appellant to prove he was innocent.

Second, the majority states, without authority, that, "Ordinarily, we would look to the reasonableness of the explanation appellant gave for his possession and presentment of the forged check." Op. at 815. This is not an accurate statement of the law, but instead an overly broad generalization. If a defendant makes an affirmative statement explaining his possession of a forged check *which proved to be false,* the false explanation is evidence from which the defendant's intent can be inferred. *Williams,* 688 S.W.2d at 490; *Wallace,* 813 S.W.2d at 752 (finding the defendant's conflicting explanations as to possession of a stolen check sufficient evidence to infer intent). The burden is on the State to prove the defendant's explanation is false before any inference can be made that the defendant intended to harm or defraud the victim. However, the majority holds it against the appellant that he did not make any statements explaining his possession, completely ignoring the appellant's right to remain silent. Just as the jury is not to be reminded that the appellant did not testify, we should not infer anything from the appellant's silence at the time he was arrested. *See Goff v. State,* 931 S.W.2d 537, 548 (Tex.Crim.App. 1996).

In *Griffin v. State,* 908 S.W.2d 624, 627 (Tex.App.—Beaumont 1995, no pet.), the court discussed cases where forgery convictions were affirmed because there was evidence of suspicious circumstances that showed the defendant had knowledge of the forgery. Some examples of suspicious circumstances the court discussed to prove a defendant's knowledge are: (1) when the

---

1. The majority tries to distinguish this case from *Crittenden* because the defendant in that case presented a witness to corroborate his explanation. Slip op. at 5, note 2. This is another example of how the majority shifts the burden to the appellant to prove his innocence.

defendant makes an affirmative statement explaining possession of the check, which proved false; (2) when there is proof the name listed as maker of the check was fictitious and the defendant gives false or conflicting explanations of possession of the check; (3) when the defendant attempts to flee; (4) when the defendant gives false information to the cashier and either does not present identification or presents false identification; or (5) when the handwriting between the forged signature and the defendant's signature is found to be similar. *Id.* There was no evidence in this case of suspicious circumstances showing the appellant had the requisite knowledge or intent.

The majority relies on *Palmer v. State,* 735 S.W.2d 696, 698 (Tex.App.—Fort Worth 1987, no pet.), to show there have been cases where the circumstances are suspicious enough to conclude the defendant knew the check was forged, regardless of any explanation. *Palmer* is distinguishable on its holding. It is true there was no explanation given by the defendant in *Palmer.* However, the court affirmed the forgery conviction because there was sufficient evidence to show the defendant stole the check, which shows knowledge of the forgery and allows an inference of the intent to defraud. *Palmer,* 735 S.W.2d at 697. Here, the evidence is not sufficient to prove the appellant stole the check, and the State has not argued that it is.

For all of these reasons, I dissent. I would reverse the judgment of the trial court and reform it to show acquittal.

Justices WILSON, ANDELL, and PRICE join this dissent.