IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00121-CV

 

Marvia Palmer,

                                                                      Appellant

 v.

 

Ford Motor Company,

                                                                      Appellee

 

 



From the 159th District Court

Angelina County, Texas

Trial Court No. CV-32214-A

 



MEMORANDUM  Opinion










 

          Marvia Palmer filed a motion to dismiss
her appeal because she no longer wishes to pursue it.  Ford Motor Company is
not opposed to the motion.

          Accordingly, this appeal is
dismissed.  Tex. R. App. P.
42.1(a)(1).

 

 

                                                                   TOM
GRAY

                                                                   Chief
Justice




Before
Chief Justice Gray,

          Justice
Reyna, and

          Judge
Trudo[1]

Appeal
dismissed

Opinion
delivered and filed June 15, 2005

[CV06]









[1]  Martha Jane Trudo, Judge of the 264th District Court of Bell County, sitting by assignment of the Chief Justice of the Texas Supreme Court
pursuant to section 74.003(h) of the Government Code.  See Tex. Gov't Code Ann. § 74.003(h)
(Vernon 2005).

 








writing to be forged, with intent to defraud or harm
another.  Id. § 32.21(a)(1)(B), (d).  Johnson asserts that the evidence
is insufficient to show that he had knowledge that the four instruments were
forged and that he thus passed the instruments with intent to defraud or harm.

When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  Any inconsistencies in the evidence are resolved in favor of
the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the sufficiency of the
evidence, we should look at “events occurring before, during and after the
commission of the offense and may rely on actions of the defendant which show
an understanding and common design to do the prohibited act.”  Each fact need
not point directly and independently to the guilt of the appellant, as long as
the cumulative force of all the incriminating circumstances is sufficient to
support the conviction.  Circumstantial evidence is as probative as direct
evidence in establishing the guilt of an actor, and circumstantial evidence
alone can be sufficient to establish guilt.  

            . . .

Under the Jackson test, we permit
juries to draw multiple reasonable inferences as long as each inference is
supported by the evidence presented at trial.  However, juries are not
permitted to come to conclusions based on mere speculation or factually
unsupported inferences or presumptions.

. . .

[C]ourts of appeals should adhere to the
Jackson standard and determine whether the necessary inferences are
reasonable based upon the combined and cumulative force of all the evidence
when viewed in the light most favorable to the verdict.

 

Hooper v. State, 214 S.W.3d 9, 13, 15-17 (Tex. Crim.
App. 2007) (citations omitted).

Intent may be inferred from
circumstantial evidence such as the acts, words, and conduct of the defendant. 
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  Proof of intent to defraud or harm
another requires proof of knowledge that the instrument is forged.  Palmer
v. State, 735 S.W.2d 696, 697-98 (Tex. App.—Fort Worth 1987, no pet.)
(citing Williams v. State, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985)). 
“The intent to defraud or harm another in a forgery case can be inferred if the
State proves an actor has knowledge that the check is forged.”  Huntley v.
State, 4 S.W.3d 813, 814 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d)
(op. on reh’g en banc) (citing Williams, 688 S.W.2d at 488). 
Circumstances that are “suspicious enough” can support an inference that the
actor had knowledge of the forgery.  See Huntley, 4 S.W.3d at 815; see,
e.g., Palmer, 735 S.W.2d at 698.

            The evidence viewed in the light most favorable to
the verdict shows that C.L.
Moore, an 86-year-old lifelong resident of Marlin who had banked at Citizens
State Bank in Marlin for fifty-five years, received his monthly bank statement
in September 2007 and noticed that money was missing from his checking
account.  He examined the photocopied checks that came with the bank statement
and immediately noticed that four checks were forged.  Moore notified the bank
of the forged checks, and the person at the bank said she would begin an
investigation.

Each of the four checks was made payable
to “Chiminh Johnson,” and they were in the respective amounts of $575.00, $575.00,
$375.00, and $575.00, for a total of $2,100.00.  The memo line on three of the
checks had the following respective handwriting:  “house repair,” “yard
work/housekeeping,” and “repairs, etc.”  The handwritten notation on the
$375.00 check was illegible.  Moore identified each check as his but said he did
not write, sign, or authorize them.  He believed he may have seen Johnson, but
Moore did not know him.  He said that Johnson had never done any work for him.

Moore testified that he kept his
checkbook in a drawer in his bedroom, the checks had been torn out of his
checkbook, but his checkbook had not been stolen.  He had not noticed that
checks had been taken out of his checkbook until he received the bank
statement.  He remembered that, around the time period of the checks, the lock on
the doorknob of his back door had been “jiggled.”  Moore said that when he left
his home for a long period of time, he would lock his doors’ bolt-action locks
and leave through his garage, but if he were leaving for only a brief period,
he would lock only the back door’s doorknob lock.

Kim Solomon testified that she has been
Moore’s next-door neighbor for nine years and that Johnson is her cousin. 
Johnson has been at her house often.  She has never seen anyone do any work in
Moore’s yard; he does his own yardwork.

            Juanita Hogg, a bank
employee, testified that Moore notified her of the forged checks, and she began
an investigation and alerted all the tellers not to accept any more checks from
Johnson, should he appear again, and to call the police.  In her investigation,
Hogg was able to identify each teller who had cashed the four checks.  Hogg
testified that the bank’s policy for cashing a bank customer’s check for a
payee who does not have an account is to verify the payee’s identity and then
to cash the check if funds are available.  Hogg identified and recognized
Johnson at trial because he had previously had an account at the bank.  After
Moore had reported the forged checks, a teller contacted Hogg and told her that
Johnson was at the bank asking questions.  Hogg told the teller to answer Johnson’s
questions and to stall him and that she would call the police.  Hogg called
Marlin Assistant Chief of Police Darrell Allen.

            Brandy Rodriquez, a bank
teller, testified that she cashed two of the checks for Johnson after verifying
his picture identification and that funds were available.  She identified
Johnson as the person for whom she cashed the checks, and she confirmed that
she had been told not to cash any more checks for Johnson if he returned.  On
cross-examination, Rodriquez said that nothing unusual or suspicious about Johnson
occurred when she cashed the two checks.

            Carolyn Bennett, another
bank teller, testified that she cashed the other two checks for Johnson after
verifying his identity.  She identified Johnson as the person for whom she cashed
the checks, and he did not seem nervous during those two transactions.  On the
second check, which she cashed for him at the walk-up window, she had Johnson
give a thumbprint (stipulated by Johnson as being his) per bank policy for the
walk-up window.  On cross-examination, she said there was nothing unusual or
suspicious about either transaction.

Bennett said that after Moore had
notified the bank of the forged checks, Johnson returned to the bank and asked
her if Moore had called the bank.  She said that Moore had not called the bank,
and, to try to stall him, she said that she would call Moore if Johnson wanted
her to.  Bennett had the impression that Johnson was there to cash a check and
that by asking if Moore had called the bank, he was checking to see if it was
clear for him to cash another of Moore’s checks.  Bennett said that when she
told Johnson that she would call Moore, Johnson became “very jumpy, very
nervous” and was in a hurry to leave, but police were able to detain him before
he left the premises.

Assistant Chief Allen said that he got a
call from the bank that Johnson was there, and he immediately walked over to
the nearby bank.  He detained Johnson as he was approaching his vehicle, which
was parked in front of the bank.  When officers arrived, Johnson was arrested
because he had an outstanding warrant for a probation violation.  Allen
attempted to question Johnson about the checks and have him give his side of
the story, but Johnson did not want to talk to him.

The evidence in the light most favorable to the
verdict shows that Johnson cashed four of Moore’s checks on three different
days; the checks noted that they were for work done by Johnson for Moore; Moore
did not know Johnson; and Johnson had not done any work for Moore.  The evidence
also showed that the checks were stolen from Moore’s home; Moore did not write
or sign the checks; someone may have “jiggled” the lock on Moore’s back door
around the time the checks were stolen; and Johnson had recent possession of
Moore’s checks.

            Johnson argues that the
evidence in this case is similar (“remarkably on all fours”) to the facts in Pfleging
v. State, 572 S.W.2d 517 (Tex. Crim. App. [Panel Op.] 1978).  We disagree;
the evidence is more similar to that in the cases cited by the State.  See
Huntley, 4 S.W.3d at 814-15; Palmer, 735 S.W.2d at 697-98.  Pfleging
is dissimilar because the evidence here, unlike that in Pfleging,
includes the following suspicious circumstances:  Johnson “often” visited his
cousin who lived next door to Moore, which would have given Johnson the
opportunity to observe Moore’s home and his “comings and goings;”after cashing
the four checks, Johnson appeared at the bank a fifth time to ask if Moore had
called the bank; Johnson became very nervous and jumpy when Bennett said she
would call Moore; Johnson walked away while Bennett was trying to stall him;
and Johnson declined to explain the checks to Assistant Chief Allen.

The jury could have reasonably inferred
that Johnson passed the forged checks with intent to defraud or harm another
because the evidence showed that Johnson was cashing checks made payable to him
for work he did not perform for Moore.  Moreover, from the above-described
suspicious circumstances, the jury could have reasonably inferred that Johnson had
knowledge that the checks were stolen from Moore and were forged.  See
Huntley, 4 S.W.3d at 814-15; Palmer, 735 S.W.2d at 698-99.  Viewing
the evidence in the light most favorable to verdict, we conclude that a
rational jury could have found that Johnson had knowledge that the four checks
were forged and that he passed the checks with intent to defraud or harm.  We
overrule issue three.

Punishment-Phase Errors

 

            Johnson’s first issue
asserts that his sentence is void because it exceeds the statutory sentencing
range, and his second issue asserts that the punishment charge was erroneous
because it included an enhanced punishment range.  The State concedes error on
these two issues.

            The offense of forgery of a
check by passing is a state-jail felony.  Tex.
Penal Code § 32.21(d).  The punishment range for an unaggravated
state-jail felony is confinement in a state jail for not more than two years or
not less than 180 days, and in addition a fine not to exceed $10,000 may be
assessed.  Id. § 12.35(a, b) (Vernon Supp. 2010).  The four indictments
each included a habitual-felon enhancement allegation for two prior and
sequential final felony convictions:  a 2001 felony conviction for burglary of
a habitation, and a 2004 felony conviction for forgery of a financial
instrument.  Johnson pled “true” to both prior convictions in the punishment
phase, and the punishment charge instructed the jury to find “true” the
enhancement allegations and to assess Johnson’s punishment for a period of 2 to
20 years and in addition a fine not to exceed $10,000.  The jury assessed an
eight-year sentence and $2,000 fine in each case.

            The trial court overruled Johnson’s
timely objection to the charge’s punishment range.  His objection was that the
punishment range was improperly enhanced to a second-degree felony because
Johnson’s prior conviction for forgery of a financial instrument was a state-jail
felony, not a felony, and the prior felony and state-jail felony could not be
used under subsection 12.42(a)(2) of the Penal Code to enhance the punishment
range to a second-degree felony.

            Subsection
12.42(a)(2) provides:

 

(2) If it is shown on the trial of a
state jail felony punishable under Section 12.35(a) that the defendant has
previously been finally convicted of two felonies, and the second previous
felony conviction is for an offense that occurred subsequent to the first
previous conviction having become final, on conviction the defendant shall be
punished for a second-degree felony.

 

Id. § 12.42(a)(2) (Vernon Supp. 2010).  Johnson is correct, as
the Court of Criminal Appeals has held:  

We thus hold that, as used in subsection
12.42(a), the terms “felony” and “state jail felony” are mutually exclusive;

…

The statute as written also does not
impose an increased punishment for offenders who have two previous convictions
in the form of both a single prior state jail felony and a single prior
non-state jail felony.  If such lack of enhancement in either case is in fact
an oversight in the statute, it is the business of the legislature, rather than
this court, to correct it.

 

Campbell v. State, 49 S.W.3d 874, 878 (Tex. Crim. App.
2001); see also Tapps v. State, 294 S.W.3d 175, 182 (Tex. Crim. App.
2009).

            A “void” or “illegal”
sentence is one that is not authorized by law.  See Ex parte Pena,
71 S.W.3d 336, 336 n.2 (Tex. Crim. App. 2002); Levy v. State, 818 S.W.2d
801 (Tex. Crim. App. 1991).  “A sentence that is outside the maximum or minimum
range of punishment is unauthorized by law and therefore illegal.”  Mizell
v. State, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).  Johnson’s four
eight-year sentences are outside the maximum range for a state-jail felony
without proper enhancement.  We sustain issue one.

            Jury charge error requires
reversal when the defendant has properly objected to the charge and we find “some
harm” to his rights.  Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App.
2005).  “Some harm” is shown from the punishment charge’s erroneous instruction
on the punishment range and the jury’s assessment of four eight-year sentences
that are outside the maximum range for a state-jail felony without proper
enhancement.  We sustain issue two.

Conclusion

            We affirm the judgments of
conviction in each case.  We reverse that portion of the judgments assessing
punishment of an eight-year sentence and $2,000 fine and remand them to the
trial court for a new trial on punishment only.  See Tex. Code. Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2010);
Abbott v. State, 196 S.W.3d 334, 349 (Tex. App.—Waco 2006, pet. ref’d).

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Davis, and

Justice Scoggins

Judgments
of conviction affirmed

Punishments
reversed, causes remanded

Opinion
delivered and filed May 4, 2011

Do
not publish

[CR25]