NUMBER 13-05-004-CR

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

JULIE ANNE FLOWERS, AKA 

JULIE ANNE RICHARDSON,                                       Appellant,

 

                                           v.

 

THE STATE OF TEXAS,                                              Appellee.

___________________________________________________________________

 

                  On
appeal from the 105th District Court

                           of Kleberg County, Texas.

___________________________________________________  _______________

 

                     MEMORANDUM
OPINION[1]

 

         Before
Chief Justice Valdez and Justices Rodriguez and Garza 

                      Memorandum
Opinion by Justice Rodriguez

 








Appellant, Julie
Anne Flowers, aka Julie Anne Richardson, was charged with twenty-two counts of
forgery, a state jail felony.  See
Tex. Pen. Code Ann. ' 32.21(b), (d) (Vernon Supp. 2005).  The jury returned a verdict of not guilty on
counts 1, 2, and 5 through 22, and a verdict of guilty on counts 3 and 4 which
charged forgery of a check in the amount of $253.08 made payable to Aaron's
Rental.[2]  See id.
' 32.21(a)(1)(A)(i) & (B).  The trial court sentenced Flowers to one year
confinement in a state jail facility, probated for a period of three
years.  It also assessed a $500.00 fine
plus court costs and restitution in the amount of $253.08.  The trial court has certified that this case
"is not a plea bargain case, and the Defendant has the right of
appeal."  See Tex. R. App. P. 25.2(a)(2)(A).  By two points of error, Flowers challenges
the legal and factual sufficiency of the evidence to support the verdict.  We reverse and remand for a new trial.

I.  Standard of Review








In a legal sufficiency review, we consider all of the evidence in the
record in the light most favorable to the verdict and determine whether, based
on that evidence and reasonable inferences therefrom, a rational jury could
have found the accused guilty of the essential elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 97 (Tex.
Crim. App. 2003).  The reviewing court
considers all evidence admitted at trial, whether properly or improperly
admitted.  Conner v. State, 67
S.W.3d 192, 197 (Tex. Crim. App. 2001).  This standard applies regardless of whether
the case is founded upon direct or circumstantial evidence.  Earhart v. State, 823 S.W.2d 607, 616
(Tex. Crim. App. 1991); Rosillo v. State, 953 S.W.2d 808, 814 (Tex. App.BCorpus Christi 1997,
pet. ref'd).  We measure the legal
sufficiency of the evidence by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).








When reviewing a challenge to the factual sufficiency of the evidence
to support the jury's finding, we must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in its finding
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  We may find the evidence to be factually
insufficient in the following ways:  (1)
if the evidence supporting the finding, considered alone, is too weak to
support the jury's finding beyond a reasonable doubt, then we must find the
evidence insufficient; or (2) if, when we weigh the evidence supporting and
contravening the finding, we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the
evidence insufficient.  Id. at
485.  We again apply a hypothetically correct jury charge analytical
construct in the context of a factual-sufficiency review.  Adi v. State, 94 S.W.3d 124, 131 (Tex. App.BCorpus Christi 2002,
pet. ref'd).

Under either standard, the fact finder is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  See Wesbrook v. State, 29 S.W.3d 103,
111 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000) (en banc).  We must give
deference to the fact finder's decisions about the weight and credibility of
evidence.  See Johnson, 23 S.W.3d
at 9.

II.  Analysis

A.  The Law








If a person
forges a writing with intent to defraud or harm another, he commits an
offense.  Tex. Pen. Code Ann. '  32.21(b)
(Vernon Supp. 2005).  Section 32.21 of
the Texas Penal Code provides, in relevant part, that "forge" means
"to make . . . or execute any writing so that it purports . . . to be the
act of another who did not authorize that act."  Id. '
32.21(a)(1)(A)(i).  "Forge"
also means to pass that writing.  See
id. ' 32.21(a)(1)(B).  Proof of intent to defraud is derivative of other
elements; thus, in a forgery case, the
culpable mental state of "intent to defraud or harm" can be inferred
if the State proves that the defendant knew that the writing in question was
forged.  See Huntley v. State, 4
S.W.3d 813, 814 (Tex. App.BHouston [1st Dist.] 1999, pet. ref'd) (op. on reh'g
en banc).  Because it is undisputed that
Flowers executed the check at issue by signing Young's name to it and that she
passed it to Aaron's Rental, for the jury to infer intent to defraud or harm,
the State had to prove that Flowers did so without Young's authorization.  See id.

B.  Testimony and Evidence Admitted at Trial

At trial, Flowers, who was hired as a bookkeeper, but who also assumed
other responsibilities at Young's bed and breakfast inn, admitted signing
Young's name to check number 10530 dated January 12, 2004, that was made
payable to Aaron's Rental for a payment on her big-screen television rental
contract agreement.  She also admitted passing
the check to Aaron's Rental.  Flowers
testified, however, that she had Young's permission to sign and pass the
check.  Flowers testified that Young
borrowed her television in order to honor a coupon being used by the clients of
the bed and breakfast where she worked for Young.  She explained that in mid-December/January,
she and Young discussed reservations and the need for a big screen
television.  Flowers had a big screen television
and was a payment behind on its rental. 
Flowers testified that "[Young] agreed to make the payment on . . .
the big screen TV, and [Flowers] would make up the difference but [Young] would
pay the entire amount, and that's exactly what happened . . . ."  Flowers testified that they "had
discussed it several times before." 
Additionally, Flowers's February 15, 2004, pay stub reflected a $120.36
deduction from Flowers's paycheck. 
This  amount was approximately
half of the $253.08 paid to Aaron's Rental.








Testifying at trial, Young agreed that he was aware that Flowers was
going to sign a check for the rental of a big screen television and that
Flowers did so at his direction to ensure that his clients would have a
television available to them during their stay at the bed and breakfast.  Young testified that "[Flowers], at that
point was more or less running what was going on" and he "trusted
[his] business to [Flowers] to watch over these type of things."  Young stated that he assumed Flowers had
rented a television as they had done that in the past.  He admitted that Flowers may have told him
that they could use hers, "but in the confusion of everything, [he didn't]
really remember."  He may have known
that they were going to use Flowers's television, but not that they were going
to rent a television set for $250.  Young
testified that he thought the rental was for one night, not for a whole
week.  Flowers said she would bring a big
screen television, and Young assumed she was going to rent one for thirty or
forty dollars a night.  Young testified
that he did not authorize Flowers to write a check for her account balance for
the television.

Colby Urbanovsky, a former employee of the bed and breakfast inn,
testified that he and another co-worker picked up a big screen television from
Flowers's house and delivered it to the main house at the bed and
breakfast.  The television was there for
about two weeks, even though the certificate was for one weekend.  Urbanovsky also testified that he believed
Young knew the television had been brought from Flowers's house because Aaron's
Rental did not deliver it.








Regarding the signing of business checks, Young testified that he
would give Flowers permission to sign his name on certain checks, but then he
would tell her not to sign any other checks. 
There is also testimony that on a number of occasions, after Flowers had
signed his name on checks to vendors, Young authorized those acts as to regular
vendors.  Aaron's Rental, however, was
not one of those vendors.  Additionally,
Young authorized Flowers to sign his name on a $3,100.00 check made payable to
Flowers to be used to buy a new car.[3]  Nonetheless, Young testified that he never
gave Flowers carte blanche to sign checks. 
He testified that he told her, "Julie, do not B [y]ou know, if you're
going to B [i]f you're in an
emergency and you're going to sign one, you must call me and we must talk it
over, and I must approve it on an individual basis."  Flowers testified that Young did not tell her
not to write anymore checks, although he would say not to sign any more of a
specific type of check until they talked about it.  Finally, Urbanovsky testified that, on
occasion, he heard Young tell Flowers to sign a check because he was not there
to do so.  He also heard Young tell Flowers
not to sign any more checks and if she had to, to call him.  In addition, other employees testified that,
some time after March 2004, they heard Young tell Flowers not to sign any more
checks.

C.  Legal Sufficiency








By her first point of error, Flowers contends that the evidence is
legally insufficient to sustain her conviction for forgery.  She asserts that no rational trier of fact
could have found beyond a reasonable doubt that (1) claimant, Luther Young, III, had not authorized
her to sign his name to a business check made payable to Aaron's Rental and (2)
Flowers passed a check with intent to defraud or harm Young.[4]  Considering all of the above evidence in the
light most favorable to the verdict, we conclude that a rational jury could
have found beyond a reasonable doubt that Young did not authorize Flowers to
sign his name and pass check number 10530. 
See Jackson, 443 U.S. at 319; Swearingen, 101 S.W.3d at
97.

Young testified that although he authorized Flowers to sign his name
on certain checks, he did not authorize a payment of her Aaron's Rental account
balance.  Moreover, Aaron's Rental was
not one of his regular vendors for which he would authorize checks.  He assumed that Flowers, who performed
numerous tasks in addition to the bookkeeping at the bed and breakfast inn, had
rented a television as they had done in the past, for perhaps thirty or forty
dollars a night.  Although Flowers
testified that Young agreed to make her payment on the big screen television,
questions concerning the credibility of witnesses and the weight to be given
their testimony are to be resolved by the trier of fact, see Mosley, 983
S.W.2d at 254, and the jury could have given more credibility and weight to
Young's testimony.








Concluding that the jury could have found Young did not authorize the
check at issue in this case, the jury was entitled to infer that Flowers possessed
the culpable mental state of "intent to defraud or harm."  See Huntley, 4 S.W.3d at 814.  Accordingly, we hold that the evidence was
legally sufficient to support the jury's verdict as to counts three and four of
the indictment.  Flowers's first point of
error is overruled.

D.  Factual Sufficiency

In her second point of error, Flowers complains that the evidence is
factually insufficient to sustain her conviction for forgery on counts 3 and
4.  More specifically, Flowers complains
that the evidence is factually insufficient to establish the "not
authorized" element of the offense. 
After considering all the evidence in a neutral light, see Zuniga,
144 S.W.3d at 484, we agree.








Summarizing the
testimony and evidence set out above, Flowers testified that she had discussed
the television arrangement with Young and had his permission to sign and pass
the check to Aaron's Rental.  Almost half
of the amount paid to Aaron's Rental was, in fact, deducted from Flowers's
February pay check.  A former employee
testified that he helped transport the television from Flowers's home and
believed Young knew it had been brought from her house.  According to Young, Flowers was running
the bed and breakfast at that time.  He
trusted her to watch over things.  They
had rented televisions in the past. 
Young agreed that Flowers was going to sign a check, at his direction,
for the rental of a big screen television for his clients' use.  Although Young testified that he assumed
Flowers was going to rent a television as they had done before and that did not
authorize a check to be written to Aaron's Rentals, he admitted Flowers may
have told Young that they could use her television.  While the amount of the rental appears to be at
issue, the authorization of the signing of a check for the rental of a
television is not, because Young had agreed to the rental of a television set
for his clients.  Moreover, in the past,
Young had authorized Flowers to write, sign his name, and pass checks after she
had done so.


Considering all the evidence in a neutral light, we conclude the jury
was not rationally justified in its finding beyond a reasonable doubt.  When measuring Young's testimony that he did
not give Flowers specific authorization to write the check to Aaron's Rental against
his testimony that he may have given Flowers permission to use her television
against the following: (1) the circumstances surrounding the event including
Young's subsequent authorization of business checks signed and passed by
Flowers for business and personal purposes; (2) the testimony supporting
Young's knowledge that Flowers's television was to be used and was, in fact,
used for his clients' stay at the bed and breakfast; (3) Young's testimony that
Flowers was more or less running what was going on and that he trusted Flowers
to watch the business; and (4) the pay stub that reflected that almost one-half
of the payment had been deducted from Flowers's paycheck as a reimbursement to
Young, we conclude that the contrary evidence is strong enough that, on this
record, the State did not meet its burden of proof.  See Zuniga, 144 S.W.3d at 485.  Thus, while giving deference to the fact
finder's decisions about the weight and credibility of evidence, see Johnson,
23 S.W.3d at 9, we conclude the evidence supporting the "not
authorized" element is factually insufficient.  Flowers's second point of error is sustained.








III.  Conclusion

Accordingly, based on the factual insufficiency of the evidence, we
reverse the jury's guilty verdict on counts 3 and 4 and remand for a new trial.[5]                                                                                     

NELDA
V. RODRIGUEZ

Justice

 

Do
not publish.

Tex.
R. App. P.
47.2(b).

 

Memorandum Opinion
delivered and 

filed this 18th day of
May, 2006.

 











[1]All issues of law presented by this
case are well settled, and the parties are familiar with the facts.  Therefore, we will not recite the law or the
facts in this memorandum opinion, except as necessary to advise the parties of
the Court's decision and the basic reasons for it.  See Tex.
R. App. P. 47.4.





[2]In relevant part, Charge 3 of the
indictment read as follows:

 

[D]efendant . . . on or about
January 12, 2004, in, KLEBERG County, Texas, did then and there, with intent to
defraud or harm another, make a writing so it purported to be the act of Luther
Young, III, who did not authorize the act, and said writing was a check of the
tenor following:  #10530 payable to
Aaron's Rental for $253.08 on 1/12/04, . . .

 

Charge 4 identified the
elements identified in Charge 3 and added that Flowers passed "to Aaron's
Rental a forged writing, knowing such writing to be forged."





[3]Flowers told Young she had an
insurance check coming with which she would repay him.  At the time of trial, Flowers had not repaid
the loan.





[4]Flowers
also generally contends that the evidence is legally insufficient because the
State failed to prove that this check was signed and passed in Kleberg County,
Texas, as alleged in the indictment.  However, in accordance with rule 38.1(h) of
the Texas Rules of Appellate Procedure, we will only consider contentions that
are supported by clear and concise arguments with appropriate citations to
authorities and the record.  See Tex. R. App. P. 38.1(h); Rhoades v.
State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc).

 





[5]We note that Flowers prays only for
reversal and acquittal.  However, because
our disposition is based on factually insufficient evidence, the remedy is to
remand for a new trial.  See Zuniga
v. State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004) (providing that reversal of the
judgment and remand for a new trial is the proper remedy when a court of
appeals finds that evidence is factually insufficient).