NUMBER 13-05-004-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JULIE ANNE FLOWERS A/K/A

JULIE ANNE RICHARDSON, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 

On appeal from the 105th District Court 

of Kleberg County, Texas

 


MEMORANDUM OPINION ON REMAND


Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Justice Rodriguez



 Appellant, Julie Anne Flowers a/k/a Julie Anne Richardson, was charged with
twenty-two counts of forgery, a state jail felony. See Tex. Penal Code Ann. § 32.21(b),
(d) (Vernon Supp. 2005). The jury returned a verdict of not guilty on counts 1, 2, and
5 through 22, and a verdict of guilty on counts 3 and 4, which charged forgery of a
check in the amount of $253.08 made payable to Aaron's Rental. (1) See id. §
32.21(a)(1)(A)(i), (B). The trial court sentenced Flowers to one year confinement in
a state jail facility, probated for a period of three years. It also assessed a $500.00
fine plus court costs and restitution in the amount of $253.08. By two points of error,
Flowers challenges the legal and factual sufficiency of the evidence to support the
verdict.

 In our original opinion and judgment, we held that the evidence was legally
sufficient but factually insufficient under the standards of review in effect at the time.
Flowers v. State, No. 13-05-004-CR, 2006 Tex. App. LEXIS 4360 (Tex. App.--Corpus
Christi May 18, 2006), rev'd and judgm't vacated, In re Flowers, PD-1298-06, 2007 Tex.
Crim. App. LEXIS 41 (Tex. Crim. App. Jan. 10, 2007) (per curiam). On January 10,
2007, the Texas Court of Criminal Appeals vacated our opinion and judgment and
remanded the case for reconsideration in light of its opinion in Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006), which re-articulated the factual sufficiency
standard of review. Id. at 415-17. Reconsidering the factual sufficiency point of error
in light of Watson, we affirm the trial court's judgment.

I. Standard of Review

 In a legal sufficiency review, we consider all of the evidence in the record in the
light most favorable to the verdict and determine whether, based on that evidence and
reasonable inferences therefrom, a rational jury could have found the accused guilty
of the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim.
App. 2003). The reviewing court considers all evidence admitted at trial, whether
properly or improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim.
App. 2001). This standard applies regardless of whether the case is founded upon
direct or circumstantial evidence. Earhart v. State, 823 S.W.2d 607, 616 (Tex. Crim.
App. 1991); Rosillo v. State, 953 S.W.2d 808, 811 (Tex. App.-Corpus Christi 1997,
pet. ref'd).

 When reviewing the factual sufficiency of the evidence we look at all evidence
in a neutral light and will reverse only if (1) the evidence is so weak that the finding
seems clearly wrong and manifestly unjust or (2) considering conflicting evidence, the
finding, though legally sufficient, is nevertheless against the great weight and
preponderance of the evidence. Watson, 204 S.W.3d at 414-15. This Court will not
reverse the jury's verdict unless, we can say with some objective basis in the record,
the great weight and preponderance of the evidence contradicts the verdict. Id. at
415.

 We measure the sufficiency of the evidence by the elements of the offense as
defined by the hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.--Corpus Christi
2002, pet. ref'd).  "Such a charge would accurately set out the law, would be
authorized by the indictment, and would not unnecessarily increase the State's
burden of proof." Malik, 953 S.W.2d at 240.

 Under either standard, the fact finder is the sole judge of the credibility of the
witnesses and the weight to be given their testimony. See Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim.
App. 2000) (en banc). We must give deference to the fact finder's decisions about
the weight and credibility of evidence. See Johnson, 23 S.W.3d at 9.

II. Analysis

A. The Law

 If a person forges a writing with intent to defraud or harm another, he commits
an offense. Tex. Penal Code Ann. § 32.21(b) (Vernon Supp. 2005). Section 32.21
of the Texas Penal Code provides, in relevant part, that "forge" means "to make . . .
or execute any writing so that it purports . . . to be the act of another who did not
authorize that act." Id. § 32.21(a)(1)(A)(i). "Forge" also means to pass that writing. 
See id. § 32.21(a)(1)(B). Proof of intent to defraud is derivative of other elements;
thus, in a forgery case, the culpable mental state of "intent to defraud or harm" can
be inferred if the State proves that the defendant knew that the writing in question was
forged. See Huntley v. State, 4 S.W.3d 813, 814 (Tex. App.-Houston [1st Dist.] 1999,
pet. ref'd) (op. on reh'g) (en banc). Here, it is undisputed that Flowers executed the
check at issue by signing Young's name to it and passing it to Aaron's Rental. The
State's burden was therefore to prove that Flowers acted without Young's
authorization. See id.

B. Testimony and Evidence Admitted at Trial

 At trial, Flowers, who was hired as a bookkeeper but who also assumed other
responsibilities at Young's bed and breakfast inn, admitted signing Young's name to
check number 10530 dated January 12, 2004, that was made payable to Aaron's
Rental for a payment on her big-screen television rental contract agreement. She
also admitted passing the check to Aaron's Rental. Flowers testified, however, that
she had Young's permission to sign and pass the check. Flowers testified that Young
borrowed her television in order to honor a coupon being used by clients of the bed
and breakfast inn. She explained that in mid-December/January, she and Young
discussed reservations and the need for a big screen television. Flowers had a big
screen television and was a payment behind on its rental. Flowers testified that
"[Young] agreed to make the payment on . . . the big screen TV, and [Flowers] would
make up the difference but [Young] would pay the entire amount, and that's exactly
what happened . . . ." Flowers testified that they "had discussed it several times
before." Additionally, Flowers's February 15, 2004 pay stub reflected a $120.36
deduction from her paycheck. This amount was approximately half of the $253.08
paid to Aaron's Rental.

 Testifying at trial, Young agreed that he was aware Flowers was going to sign
a check for the rental of a big screen television and that Flowers did so at his direction
to ensure that his clients would have a television available to them during their stay
at the bed and breakfast inn. Young testified that "[Flowers], at that point was more
or less running what was going on" and he "trusted [his] business to [Flowers] to
watch over these type of things." Young stated that he assumed Flowers had rented
a television as they had done that in the past. He admitted that Flowers may have
told him that they could use hers, "but in the confusion of everything, [he didn't] really
remember." He may have known that they were going to use Flowers's television, but
not that they were going to rent a television set for $250. Young testified that he
thought the rental was for one night, not for a whole week. Flowers told him she
would bring a big screen television, and Young assumed she was going to rent one
for thirty or forty dollars a night. Young testified that he did not authorize Flowers to
write a check for her account balance on the television.

 Colby Urbanovsky, a former employee of the bed and breakfast inn, testified
that he and another co-worker picked up a big screen television from Flowers's house
and delivered it to the main house at the bed and breakfast inn. The television was
there for about two weeks, even though the coupon used by the clients was for one
weekend. Urbanovsky also testified that he believed Young knew the television had
been brought from Flowers's house because Aaron's Rental did not deliver it.

 Regarding the signing of business checks, Young testified that he would give
Flowers permission to sign his name on certain checks, but then he would tell her not
to sign any other checks. There is also testimony that on a number of occasions,
after Flowers had signed his name on checks to vendors, Young authorized those
acts as to regular vendors. Aaron's Rental, however, was not one of those vendors. 
Additionally, Young authorized Flowers to sign his name on a $3,100.00 check made
payable to Flowers to be used to buy a new car. (2) Nonetheless, Young testified that
he never gave Flowers carte blanche to sign checks. He testified that he told her,
"Julie, do not - [y]ou know, if you're going to - [i]f you're in an emergency and you're
going to sign one, you must call me and we must talk it over, and I must approve it
on an individual basis." Flowers testified that Young did not tell her not to write
anymore checks, although he would say not to sign any more of a specific type of
check until they talked about it. Finally, Urbanovsky testified that, on occasion, he
heard Young tell Flowers to sign a check because he was not there to do so. He also
heard Young tell Flowers not to sign any more checks and if she had to, to call him. 
In addition, other employees testified that, some time after March 2004, they heard
Young tell Flowers not to sign any more checks.

C. Legal Sufficiency

 By her first point of error, Flowers contends that the evidence is legally
insufficient to sustain her conviction for forgery. She asserts that no rational trier of
fact could have found beyond a reasonable doubt (1) that claimant, Luther Young, III,
had not authorized her to sign his name to a business check made payable to Aaron's
Rental and (2) that Flowers passed a check with intent to defraud or harm Young. (3)

Considering all of the above evidence in the light most favorable to the verdict, we
conclude that a rational jury could have found beyond a reasonable doubt that Young
did not authorize Flowers to sign his name and pass check number 10530. See
Jackson, 443 U.S. at 319; Swearingen, 101 S.W.3d at 95.

 Young testified that although he authorized Flowers to sign his name on certain
checks, he did not authorize a payment towards her Aaron's Rental account balance. 
Moreover, Aaron's Rental was not one of his regular vendors for which he would
authorize her to sign checks. He assumed that Flowers, who performed numerous
tasks in addition to the bookkeeping at the bed and breakfast inn, had rented a
television as they had done in the past, for perhaps thirty or forty dollars a night. 
Although Flowers testified that Young agreed to make her payment to Aaron's Rental,
questions concerning the credibility of witnesses and the weight to be given their
testimony are to be resolved by the trier of fact, and the jury could have given more
credibility and weight to Young's testimony. See Wesbrook, 29 S.W.3d at 111;
Johnson, 23 S.W.3d at 7. 

 Concluding that the jury could have found Young did not authorize the check
at issue in this case, the jury was entitled to infer that Flowers possessed the culpable
mental state of "intent to defraud or harm." See Huntley, 4 S.W.3d at 814. 
Accordingly, we hold that the evidence was legally sufficient to support the jury's
verdict as to counts three and four of the indictment. Flowers's first point of error is
overruled.

D. Factual Sufficiency

 In her second point of error, Flowers complains that the evidence is factually
insufficient to sustain her conviction for forgery. More specifically, Flowers complains
that the evidence is factually insufficient to establish the "not authorized" element of
the offense. We disagree.

 In our original opinion in this appeal, our factual sufficiency review was largely
guided by the following standard articulated by the court of criminal appeals in Zuniga
v. State:

 When reviewing a challenge to the factual sufficiency of the evidence to
support the jury's finding, we must determine whether, considering all
the evidence in a neutral light, the jury was rationally justified in its
finding beyond a reasonable doubt. We may find the evidence to be
factually insufficient in the following ways: (1) if the evidence supporting
the finding, considered alone, is too weak to support the jury's finding
beyond a reasonable doubt, then we must find the evidence insufficient;
or (2) if, when we weigh the evidence supporting and contravening the
finding, we conclude that the contrary evidence is strong enough that the
State could not have met its burden of proof, we must find the evidence
insufficient.

 

Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004), overruled by Watson,
204 S.W.3d at 417. In Watson, the court of criminal appeals stated the following:

 Any holding that a criminal appellate court can reverse and remand for
a new trial even when the evidence "preponderates" in favor of a
conviction is inconsistent with that historically required high level of
skepticism.

 

 . . . We therefore disavow such language in Zuniga and reiterate that it
is not enough that the appellate court harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally
sufficient evidence. An appellate court judge cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on
the quantum of evidence admitted, he would have voted to acquit had
he been on the jury. . . . We have always held that an appellate court
must first be able to say, with some objective basis in the record, that
the great weight and preponderance of the (albeit legally sufficient)
evidence contradicts the jury's verdict before it is justified in exercising
its appellate fact jurisdiction to order a new trial.


Watson, 204 S.W.3d at 417. Therefore, we must now apply the standard articulated
in Watson to Flowers's factual sufficiency challenge.

 Flowers argues that there was evidence that (1) Young allowed Flowers to
handle business regarding the bed and breakfast inn, (2) Young gave Flowers prior
authorization to sign checks, including this check, (3) Young directed her to get a
television to honor a coupon, (4) Flowers acquired a big screen television for the bed
and breakfast inn, (5) Young was aware that Flowers's television was to be used and
was, in fact, used for his clients' stay at the bed and breakfast inn, and (6) Young took
a deduction from Flowers's paycheck which equaled approximately half of the monthly
rental amount paid to Aaron's Rentals for the television. 

 Young testified that although he gave Flowers permission to sign his name on
certain checks, he told her several times not to sign his name on any checks without
his prior authorization. Young testified that he told Flowers, "If you're in an
emergency and you're going to sign one [a check], you must call me and we must talk
it over, and I must approve it on an individual basis." Moreover, when the State
asked Young, "Did you ever authorize Julie Richardson [Flowers] to write a check for
the [Aaron Rentals'] account balance for this T.V.?" Young answered, "Absolutely
not." Kirk Scott, a former employee of the bed and breakfast inn, testified that he
overheard Young tell Flowers he did not want her signing his name on any checks. 
Leticia G. Ramirez, an employee of Young, testified she heard Young "tell Julli [sic]
not to sign any more checks." Ramirez reiterated during re-cross examination that
she heard Young tell Flowers, "Do not sign any checks." 

 As the sole judge of the credibility of the witnesses and the weight to be given
their testimony, the jury was free to believe that Young did not authorize Flowers to
sign his name to the check to pay her account balance with Aaron's Rentals. See
Wesbrook, 29 S.W.3d at 111; Johnson, 23 S.W.3d at 7. Therefore, after reviewing
all of the evidence in a neutral light, we conclude that the evidence is not so weak that
it seems clearly wrong and manifestly unjust, and after considering the conflicting
evidence, the finding is not against the great weight and preponderance of the
evidence. See Watson, 204 S.W.3d 404, 414-15. We overrule Flowers's second point
of error.

IV. Conclusion

 Finding no error, we affirm the trial court's judgment. NELDA V. RODRIGUEZ

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion on Remand delivered

and filed this 10th day of January, 2008.
1. In relevant part, Charge 3 of the indictment read as follows:


 [D]efendant . . . on or about January 12, 2004, in, KLEBERG County, Texas, did then and
there, with intent to defraud or harm another, make a writing so it purported to be the act of
Luther Young, III, who did not authorize the act, and said writing was a check of the tenor
following: #10530 payable to Aaron's Rental for $253.08 on 1/12/04, . . .


 Charge 4 identified the elements identified in Charge 3 and added that Flowers passed "to Aaron's
Rental a forged writing, knowing such writing to be forged."
2. Flowers told Young she was expecting a check from her insurance company which she would use
to repay him. At the time of trial, Flowers had not repaid the loan.
3. Flowers also generally contends that the evidence is legally insufficient because the State failed to
prove that this check was signed and passed in Kleberg County, Texas, as alleged in the indictment. 
However, in accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider
contentions that are supported by clear and concise arguments with appropriate citations to authorities and
the record. See Tex. R. App. P. 38.1(h); Rhoades v. State, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en
banc).