

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00205-CR
### No. 10-09-00206-CR
### No. 10-09-00207-CR
### No. 10-09-00208-CR

**CHIMINH EDVON JOHNSON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 82nd District Court
### Falls County, Texas
### Trial Court No. 8502, Trial Court No. 8503
### Trial Court No. 8504 and Trial Court No. 8505

## MEMORANDUM OPINION

These four cases involve identical issues and will therefore be decided together. Four amended indictments charged Chiminh Edvon Johnson with the state-jail felony offense of forgery of a financial instrument by passing. *See* TEX. PENAL CODE § 32.21(b), (d) (Vernon Supp. 2010). A jury found Johnson guilty on the sole count in each of the four cases and, based on the State's enhancement allegations, assessed an eight-year

sentence and $2,000 fine in each case, and the trial court ordered the sentences to run concurrently. Johnson raises three issues in this appeal.

## Sufficiency of the Evidence

We begin with the third issue in each case, which asserts that the evidence is legally insufficient. Based on the four indictments' allegations, Johnson was charged with passing a forged writing, knowing such writing to be forged, with intent to defraud or harm another. *Id.* § 32.21(a)(1)(B), (d). Johnson asserts that the evidence is insufficient to show that he had knowledge that the four instruments were forged and that he thus passed the instruments with intent to defraud or harm.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

> In reviewing the sufficiency of the evidence, we should look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Circumstantial evidence is as probative as direct

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.

. . .

Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions.

. . .

[C]ourts of appeals should adhere to the *Jackson* standard and determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.

*Hooper v. State,* 214 S.W.3d 9, 13, 15-17 (Tex. Crim. App. 2007) (citations omitted).

Intent may be inferred from circumstantial evidence such as the acts, words, and conduct of the defendant. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Proof of intent to defraud or harm another requires proof of knowledge that the instrument is forged. *Palmer v. State,* 735 S.W.2d 696, 697-98 (Tex. App.—Fort Worth 1987, no pet.) (citing *Williams v. State,* 688 S.W.2d 486, 488 (Tex. Crim. App. 1985)). "The intent to defraud or harm another in a forgery case can be inferred if the State proves an actor has knowledge that the check is forged." *Huntley v. State,* 4 S.W.3d 813, 814 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (op. on reh'g en banc) (citing *Williams,* 688 S.W.2d at 488). Circumstances that are "suspicious enough" can support an inference that the actor had knowledge of the forgery. *See Huntley,* 4 S.W.3d at 815; *see, e.g., Palmer,* 735 S.W.2d at 698.

The evidence viewed in the light most favorable to the verdict shows that C.L. Moore, an 86-year-old lifelong resident of Marlin who had banked at Citizens State Bank in Marlin for fifty-five years, received his monthly bank statement in September

2007 and noticed that money was missing from his checking account. He examined the photocopied checks that came with the bank statement and immediately noticed that four checks were forged. Moore notified the bank of the forged checks, and the person at the bank said she would begin an investigation.

Each of the four checks was made payable to "Chiminh Johnson," and they were in the respective amounts of $575.00, $575.00, $375.00, and $575.00, for a total of $2,100.00. The memo line on three of the checks had the following respective handwriting: "house repair," "yard work/housekeeping," and "repairs, etc." The handwritten notation on the $375.00 check was illegible. Moore identified each check as his but said he did not write, sign, or authorize them. He believed he may have seen Johnson, but Moore did not know him. He said that Johnson had never done any work for him.

Moore testified that he kept his checkbook in a drawer in his bedroom, the checks had been torn out of his checkbook, but his checkbook had not been stolen. He had not noticed that checks had been taken out of his checkbook until he received the bank statement. He remembered that, around the time period of the checks, the lock on the doorknob of his back door had been "jiggled." Moore said that when he left his home for a long period of time, he would lock his doors' bolt-action locks and leave through his garage, but if he were leaving for only a brief period, he would lock only the back door's doorknob lock.

Kim Solomon testified that she has been Moore's next-door neighbor for nine years and that Johnson is her cousin. Johnson has been at her house often. She has

never seen anyone do any work in Moore's yard; he does his own yardwork.

Juanita Hogg, a bank employee, testified that Moore notified her of the forged checks, and she began an investigation and alerted all the tellers not to accept any more checks from Johnson, should he appear again, and to call the police. In her investigation, Hogg was able to identify each teller who had cashed the four checks. Hogg testified that the bank's policy for cashing a bank customer's check for a payee who does not have an account is to verify the payee's identity and then to cash the check if funds are available. Hogg identified and recognized Johnson at trial because he had previously had an account at the bank. After Moore had reported the forged checks, a teller contacted Hogg and told her that Johnson was at the bank asking questions. Hogg told the teller to answer Johnson's questions and to stall him and that she would call the police. Hogg called Marlin Assistant Chief of Police Darrell Allen.

Brandy Rodriquez, a bank teller, testified that she cashed two of the checks for Johnson after verifying his picture identification and that funds were available. She identified Johnson as the person for whom she cashed the checks, and she confirmed that she had been told not to cash any more checks for Johnson if he returned. On cross-examination, Rodriquez said that nothing unusual or suspicious about Johnson occurred when she cashed the two checks.

Carolyn Bennett, another bank teller, testified that she cashed the other two checks for Johnson after verifying his identity. She identified Johnson as the person for whom she cashed the checks, and he did not seem nervous during those two transactions. On the second check, which she cashed for him at the walk-up window,

she had Johnson give a thumbprint (stipulated by Johnson as being his) per bank policy for the walk-up window. On cross-examination, she said there was nothing unusual or suspicious about either transaction.

Bennett said that after Moore had notified the bank of the forged checks, Johnson returned to the bank and asked her if Moore had called the bank. She said that Moore had not called the bank, and, to try to stall him, she said that she would call Moore if Johnson wanted her to. Bennett had the impression that Johnson was there to cash a check and that by asking if Moore had called the bank, he was checking to see if it was clear for him to cash another of Moore's checks. Bennett said that when she told Johnson that she would call Moore, Johnson became "very jumpy, very nervous" and was in a hurry to leave, but police were able to detain him before he left the premises.

Assistant Chief Allen said that he got a call from the bank that Johnson was there, and he immediately walked over to the nearby bank. He detained Johnson as he was approaching his vehicle, which was parked in front of the bank. When officers arrived, Johnson was arrested because he had an outstanding warrant for a probation violation. Allen attempted to question Johnson about the checks and have him give his side of the story, but Johnson did not want to talk to him.

The evidence in the light most favorable to the verdict shows that Johnson cashed four of Moore's checks on three different days; the checks noted that they were for work done by Johnson for Moore; Moore did not know Johnson; and Johnson had not done any work for Moore. The evidence also showed that the checks were stolen from Moore's home; Moore did not write or sign the checks; someone may have

"jiggled" the lock on Moore's back door around the time the checks were stolen; and Johnson had recent possession of Moore's checks.

Johnson argues that the evidence in this case is similar ("remarkably on all fours") to the facts in *Pfleging v. State,* 572 S.W.2d 517 (Tex. Crim. App. [Panel Op.] 1978). We disagree; the evidence is more similar to that in the cases cited by the State. *See Huntley,* 4 S.W.3d at 814-15; *Palmer,* 735 S.W.2d at 697-98. *Pfleging* is dissimilar because the evidence here, unlike that in *Pfleging*, includes the following suspicious circumstances: Johnson "often" visited his cousin who lived next door to Moore, which would have given Johnson the opportunity to observe Moore's home and his "comings and goings;"after cashing the four checks, Johnson appeared at the bank a fifth time to ask if Moore had called the bank; Johnson became very nervous and jumpy when Bennett said she would call Moore; Johnson walked away while Bennett was trying to stall him; and Johnson declined to explain the checks to Assistant Chief Allen.

The jury could have reasonably inferred that Johnson passed the forged checks with intent to defraud or harm another because the evidence showed that Johnson was cashing checks made payable to him for work he did not perform for Moore. Moreover, from the above-described suspicious circumstances, the jury could have reasonably inferred that Johnson had knowledge that the checks were stolen from Moore and were forged. *See Huntley,* 4 S.W.3d at 814-15; *Palmer,* 735 S.W.2d at 698-99. Viewing the evidence in the light most favorable to verdict, we conclude that a rational jury could have found that Johnson had knowledge that the four checks were forged and that he passed the checks with intent to defraud or harm. We overrule issue three.

## Punishment-Phase Errors

Johnson's first issue asserts that his sentence is void because it exceeds the statutory sentencing range, and his second issue asserts that the punishment charge was erroneous because it included an enhanced punishment range. The State concedes error on these two issues.

The offense of forgery of a check by passing is a state-jail felony. TEX. PENAL CODE § 32.21(d). The punishment range for an unaggravated state-jail felony is confinement in a state jail for not more than two years or not less than 180 days, and in addition a fine not to exceed $10,000 may be assessed. *Id.* § 12.35(a, b) (Vernon Supp. 2010). The four indictments each included a habitual-felon enhancement allegation for two prior and sequential final felony convictions: a 2001 felony conviction for burglary of a habitation, and a 2004 felony conviction for forgery of a financial instrument. Johnson pled "true" to both prior convictions in the punishment phase, and the punishment charge instructed the jury to find "true" the enhancement allegations and to assess Johnson's punishment for a period of 2 to 20 years and in addition a fine not to exceed $10,000. The jury assessed an eight-year sentence and $2,000 fine in each case.

The trial court overruled Johnson's timely objection to the charge's punishment range. His objection was that the punishment range was improperly enhanced to a second-degree felony because Johnson's prior conviction for forgery of a financial instrument was a state-jail felony, not a felony, and the prior felony and state-jail felony could not be used under subsection 12.42(a)(2) of the Penal Code to enhance the punishment range to a second-degree felony.

Subsection 12.42(a)(2) provides:

> (2) If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a second-degree felony.

*Id.* § 12.42(a)(2) (Vernon Supp. 2010). Johnson is correct, as the Court of Criminal Appeals has held:

> We thus hold that, as used in subsection 12.42(a), the terms "felony" and "state jail felony" are mutually exclusive;
> …
> The statute as written also does not impose an increased punishment for offenders who have two previous convictions in the form of both a single prior state jail felony and a single prior non-state jail felony. If such lack of enhancement in either case is in fact an oversight in the statute, it is the business of the legislature, rather than this court, to correct it.

*Campbell v. State,* 49 S.W.3d 874, 878 (Tex. Crim. App. 2001); *see also Tapps v. State,* 294 S.W.3d 175, 182 (Tex. Crim. App. 2009).

A "void" or "illegal" sentence is one that is not authorized by law. *See Ex parte Pena*, 71 S.W.3d 336, 336 n.2 (Tex. Crim. App. 2002); *Levy v. State*, 818 S.W.2d 801 (Tex. Crim. App. 1991). "A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). Johnson's four eight-year sentences are outside the maximum range for a state-jail felony without proper enhancement. We sustain issue one.

Jury charge error requires reversal when the defendant has properly objected to the charge and we find "some harm" to his rights. *Ngo v. State,* 175 S.W.3d 738, 743

(Tex. Crim. App. 2005). "Some harm" is shown from the punishment charge's erroneous instruction on the punishment range and the jury's assessment of four eight-year sentences that are outside the maximum range for a state-jail felony without proper enhancement. We sustain issue two.

## Conclusion

We affirm the judgments of conviction in each case. We reverse that portion of the judgments assessing punishment of an eight-year sentence and $2,000 fine and remand them to the trial court for a new trial on punishment only. *See* TEX. CODE. CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp. 2010); *Abbott v. State*, 196 S.W.3d 334, 349 (Tex. App.—Waco 2006, pet. ref'd).

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Judgments of conviction affirmed
Punishments reversed, causes remanded
Opinion delivered and filed May 4, 2011
Do not publish
[CR25]